United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Angel Noel Oliva,<br>Petitioner | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 23-22789-Scola |
| Warden, Miami Low-FCI,<br>Respondent. | )<br>) | |

### **Order**

Before the Court is Petitioner Angel Noel Oliva's petition for writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1), along with its supporting memorandum of law (ECF No. 3). In the petition, the Petitioner seeks the expungement of his disciplinary record and restoration of his good time credits. (*See* ECF No. 1 at 8). The Court has considered the petition, the government's response (ECF No. 8), and is otherwise fully advised.[1] For the reasons explained below, the Petitioner's request for habeas relief is denied.

**Background**

On August 31, 2022, Officer A. Vazquez was conducting his rounds when he came across a cell with its window covered. (*See* ECF No. 8-1 at 2–3). In the cell, Officer Vazquez found the Petitioner and two other inmates. (*See id.*). Officer Vazquez noticed the Petitioner attempting to hide something in his pocket, prompting him to search each of the three inmates. (*See id.*). On the Petitioner, Officer Vazquez discovered a pill bottle containing strips of paper. (*See id.*). Officer Vazquez recorded his findings in an incident report but gave conflicting descriptions of the strips of paper; specifically, he initially described the pieces of paper as white but later stated that they were orange. (*See id.* at 3). Officer Vazquez delivered the pill bottle and its contents to the "compound

---

[1] The Petitioner did not file a reply and the deadline by which to do so has passed. (*See* ECF No. 6 at 2 ("The Petitioner may, but is not required to, file a reply within fourteen (14) days of the date the response is filed." (emphasis omitted)); ECF No. 8 (stating that the response was electronically filed on September 26, 2023)).

officer[,]" who forwarded them for testing. (*Id.*). The strips in the pill bottle tested positive for Buprenorphine—a Schedule III drug under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* (*See* ECF No. 8-1 at 3).

Officer Vazquez initially documented the incident in a report drafted on August 31, 2022 (i.e., the day of the incident), but the report was later "suspended [p]ending" a rewrite authorized by the warden. (*Id.* at 2, 4, 26). Approximately two weeks later, on September 13, 2022, Officer Vazquez rewrote the incident report to include additional detail, and the report was delivered to the Petitioner that same day. (*See id.* at 2–3, 16–18). Also on September 13, 2022, Lieutenant J. Clark met with the Petitioner to investigate the incident detailed in the rewritten report. (*See id.*). Before commencing his investigation, Lieutenant Clark informed the Petitioner of his right to remain silent during the investigation. (*See id.*). The Petitioner acknowledged and exercised his right to remain silent, declining to make a statement in his defense. (*See id.*). Following his investigation, Lieutenant Clark concluded that the Petitioner was properly charged with drug possession and referred the matter to the Unit Disciplinary Committee ("UDC") for further disposition. (*See id.*).

The next day, on September 14, 2022, the Petitioner appeared before the UDC. (*See id.* at 3). However, the UDC took no action, instead referring the matter to a Disciplinary Hearing Officer ("DHO") due to the severity of the violation. (*See id.* at 3; *id.* at 17 (stating implicitly that a finding of guilt was for the DHO to make)). The Petitioner then received forms informing him of the details of his disciplinary hearing and his rights during that hearing. (*See id.* at 4, 21, 23). To prepare for his hearing, the Petitioner requested the assistance of a staff representative. (*See id.* at 4, 21).

The Petitioner's disciplinary hearing took place on November 3, 2022— following a one-week continuance made at the request of the Petitioner's representative. (*See id.* at 4, 25–28). At the outset of the hearing, the DHO reviewed the Petitioner's due process rights with him and confirmed he had

received a copy of the incident report. (*See id.*). The Petitioner denied the charges leveled against him but offered no evidence in his defense or witnesses who could testify to his innocence. (*See id.*). The Petitioner's representative inquired as to the delays the Petitioner experienced during the disciplinary process and the inconsistency in Officer Vazquez's description of the strips of paper discovered on the Petitioner's person. (*See id.*). The DHO explained to the Petitioner that his incident report was delayed due to a rewrite authorized by the warden and that his disciplinary hearing had been continued to allow him time to confer with his representative. (*See id.*). The DHO then addressed the discrepancy in Officer Vazquez's description of the strips of paper, stating that they could be mistaken as being white since the pill bottle in which they were found was orange. (*See id.*).

      The DHO ultimately found the Petitioner guilty of the charged conduct. (*See id.* at 4–5, 26–28). In making this finding, the DHO considered the following evidence: (1) the warden's extension memo authorizing the rewrite of the incident report, (*see id.* at 4, 30); (2) the photographs of the substance found on the Petitioner's person and the test results revealing the substance to be contraband, (*see id.* at 4, 32–33); (3) a memorandum of the officer who tested the contraband, stating that he tested the contraband using accepted testing methods and found that the strips of paper had been saturated with Buprenorphine, (*see id.* at 4, 35); and (4) the testing certification of the officer who tested the contraband, (*see id.* at 4, 37). The DHO sanctioned the Petitioner with "[forty-one] days disallowance of statutory good conduct time, [thirty] days of disciplinary segregation, [twenty-eight] days disallowance of nonvested good conduct time, and 180 days loss of commissary, phone and visitation privileges." (*See id.* at 5). The DHO stated that the disallowance of good conduct time was imposed in compliance with the mandatory sanctioning guidelines. (*See id.* at 28).

**Discussion**

The Petitioner identifies three issues in his prison disciplinary proceedings that purportedly compel habeas relief. First, the Petitioner claims that prison officials failed to follow the Bureau of Prisons' ("BOP") procedure for disciplinary proceedings. (*See* ECF No. 3 at 1). Second, the Petitioner claims that prison officials violated his due process rights during his disciplinary proceedings. (*See id.*). And third, the Petitioner contends that insufficient evidence supported the DHO's finding of guilt. (*See id.*). The Court addresses each of these arguments in turn.

*Issues 1 and 2*

The Court addresses the first and second issues together due to their interrelatedness and, ultimately, concludes that the Petitioner was afforded due process during his disciplinary proceedings and that prison officials' purported violations of a federal regulation and an unspecified BOP program statement did not violate his procedural due process rights.

In the petition, the Petitioner contends that (1) prison officials violated 28 C.F.R. § 541.5 because they only provided him with a rewrite of the incident report and not the original report and because they failed to provide an explanation for the report's delay, (*see* ECF No. 3 at 1–2); (2) prison officials violated an unspecified BOP program statement by failing to keep a record of the contraband's chain of custody before it was tested, (*see id.* at 2); and (3) prison officials violated § 541.5 when they failed to provide his representative with the evidence presented against him before proceeding with the disciplinary hearing, (*see id.* at 3). The Petitioner contends that these violations impinged upon his right to procedural due process.

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of due process rights to which a defendant in a criminal proceeding is entitled does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Nevertheless, the Supreme Court has stated that prisoners are still guaranteed some procedural due process rights in prison disciplinary

proceedings; this limited guarantee of procedural due process rights requires prison officials to provide a prisoner facing disciplinary proceedings with: (1) written notice of the charges he faces at least twenty-four hours before his appearance at his disciplinary hearing, (2) a written statement by the DHO citing the evidentiary basis for its findings and the reasons for the disciplinary action, and (3) the opportunity to call witnesses and present documentary evidence in his defense, so long as institutional safety and correctional goals are not jeopardized. *See id.* at 563–67.

Here, the Petitioner fails to show that he was denied the enumerated procedural protections required by *Wolff*. First, the record before the Court reflects that the Petitioner was afforded written notice of the charges against him fifty-one days before his hearing. (*See* ECF No. 8-1 at 16 (stating that the Petitioner received the rewritten incident report at 3:05 PM on September 13, 2022); *id.* at 25 (stating that the Petitioner's disciplinary hearing took place at 9:00 AM on November 3, 2022)). Next, the DHO drafted and provided the Petitioner with a written statement outlining the evidentiary basis for its finding of guilt and its reasons for imposing sanctions. (*See id.* at 26–28 (detailing the evidentiary basis on which the DHO's finding of guilt rested); *id.* at 28 (explaining the reasons for sanctions)). Finally, the DHO provided the Petitioner with an opportunity to present evidence and call witnesses—although, he declined to do so. (*See id.* at 26 (stating that the Petitioner waived his right to witnesses)). Therefore, the Petitioner failed to show a violation of his procedural due process rights.

Further, the Petitioner's claim that prison officials' purported violations of § 541.5 and an unspecified BOP program statement provide a basis for habeas relief independent of his due process claims is meritless. First, nowhere in § 541.5 does it state that a prisoner must receive the original copy of a rewritten incident report; rather, the regulation only requires prison officials to issue "*an* incident report describing" the charged conduct. *Id.* (emphasis added). Additionally, the Petitioner's claim that he received no explanation for

the incident report's delay is refuted by the record. (*See* ECF No. 3 at 7 (explaining to the Petitioner the reason for his delayed receipt of the incident report)). Second, "[a] claim that the BOP violated its own Program Statement[] . . . does not constitute a violation of federal law[ and,] therefore, [] cannot be sustained in a habeas petition." *Le v. Augustine*, No. 12-cv-377, 2013 WL 2250142, at *7 (N.D. Fla. May 22, 2013). Third, the Petitioner's claim that his staff representative was denied access to evidence is not credible considering his representative's questions about the evidence presented at the hearing. (*See* ECF No. 3 at 6 ("Staff Representative's Statement: We just have some questions about why it was served late and the color discrepancy in the report."))

For the foregoing reasons, the Petitioner fails to establish that Issues 1 and 2 warrant habeas relief.

### *Issue 3*

Next, the Petitioner argues that, in violation of his procedural due process rights, the DHO failed to consider discrepancies in the evidence and accord appropriate weight to the Petitioner's exculpatory statements before making its finding of guilt. This argument fails to convince.

A court must uphold the sanctions imposed by a DHO if there is "some evidence" to support the disciplinary action. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455–56 (1985). Determining whether "some evidence" exists does not require an examination of the entire record, an independent assessment of the credibility of witnesses, or a weighing of the evidence. *See Smith v. Sec'y, Fla. Dep't of Corr.*, 432 F. App'x 843, 845 (11th Cir. 2011). "Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." *Hill*, 472 U.S. at 455–56 (1985). However, the Eleventh Circuit has cautioned courts in this Circuit against "judging and reweighing the evidence presented [during a] prison disciplinary hearing" because such considerations are appropriately left to the discretion of the DHO. *Young v. Jones*, 37 F.3d 1457, 1460 (11th Cir. 1994).

Despite the Petitioner's behests, the Court will not reweigh the evidence presented during his disciplinary hearing and will defer to the evidentiary findings of the DHO. The only issue the Court will consider is whether there was "some evidence" to support the DHO's disciplinary action; and after reviewing the DHO's evidentiary basis for making its disciplinary decision, the Court concludes that evidence before the DHO was sufficient to support the sanctions it imposed. As previously mentioned, the DHO based its disciplinary decision on (1) the warden's extension memorandum, (2) photo evidence of the substance found on the Petitioner's person and the test results showing it to be contraband, (3) the testing officer's memorandum relating to his findings, and (4) the testing officer's certification. (*See* ECF No. 8-1 at 4). In sum, because "some evidence" supports the DHO's disciplinary action, the Court will uphold it.

**Conclusion**

Accordingly, it is **ordered and adjudged** that the petition **(ECF No. 1)** is **denied.** The Clerk is directed to **close** the case.

**Done and ordered**, in chambers, in Miami, Florida, on November 21, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

*Copies, via U.S. Mail, to*
Angel Noel Oliva
14302-104
Miami FCI
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 779800
Miami, Florida 33177
PRO SE